IN THE COURT OF APPEALS OF TENNESSEE

EASTERN SECTION

FILED

March 6, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

JAY FRANKLIN SMITH,          )   C/A NO.   03A01-9511-CH-00381
                             )
     Plaintiff-Appellee,     )   HAMBLEN CHANCERY
                             )
                             )
v.                           )   HON.  DENNIS H.  INMAN,
                             )   CHANCELLOR
                             )
PATRICIA ANN SMITH,          )   AFFIRMED IN PART,
                             )   REVERSED IN PART
     Defendant-Appellant.    )   AND REMANDED

HERBERT M. BACON and MARK A. COWAN, BACON, JESSEE, PERKINS & SWANSON, Morristown, for Plaintiff-Appellee.

ETHEL P. LAWS, Morristown, for Defendant-Appellant.

O P I N I O N

Franks. J.

In this custody dispute, the parties were divorced in 1992, and the mother was granted custody of the parties' minor son. The decree provided that the mother would not remove the child from the State without permission of the Court, but no scheduled visitation was ordered.

Subsequently, visitation schedules were ordered or agreed upon and in June of 1993 the mother asked permission to move to Florida with the child, which petition was denied. In 1994, the father petitioned for a change of custody and contempt for failure of the mother to allow ordered

visitation. The Court refused to change custody, but sentenced the mother to two days in jail for contempt of court, but stayed the sentence indefinitely on ?the assumption there will be no recurrence of this particular problem?. This judgment was entered on December 13, 1994.

In January of 1995, the father filed a petition for contempt, change of custody and other relief, asking that the wife be held in contempt for failure to honor the visitation schedule during the Christmas holidays and in January of 1995. The mother filed a detailed answer generally denying the allegations, and no immediate hearing was scheduled.

On May 23, the father filed an amended petition alleging further violations of the ordered visitation by the mother. The mother answered the amendment to the petition for contempt and countered with a request that the Court allow her to relocate with the child to the State of Florida.

The Trial Judge, upon hearing proof, denied the mother's application to move with the child to the State of Florida, and found that she had wilfully refused to make the child available for ordered visitation on three occasions, and sentenced her to ten days in jail for each contempt, plus the two days mentioned in the December judgment, for a total of 32 days. He then ordered that sixteen days would be reserved, the remaining would be ?temporarily stayed?. The judgment was stayed and this appeal ensued.

As to the issue on the judgment for contempt, the mother essentially argues that the judgment is for criminal contempt should be reversed because there was no show cause order issued requiring the mother to appear at a certain time

2

and show why she should not be held in contempt of court, or why her contempt should not be punished with incarceration, and asserts: ?Without such notice, the conviction cannot stand.?

We cannot agree. The foregoing argument would be valid had the Court been proceeding under Tennessee Code Annotated §36-5-104(a).[1] In this connection, our Supreme Court in *Brown v. Latham and Walker v. Walker, Jr.,* ___ S.W.2d ___, (filed January 22, 1996 at Nashville), said:

> The decision of this Court is that §36-5-104(a) defines a criminal offense and the respondents are entitled to jury trials. The statute states the essential indicia of a criminal offense. Its violation is not declared to be a contempt as contemplated by Tennessee Code Annotated §29-9-102.

The Court then contrasted this section with §29-9-102[2] and

_____

[1] **36-5-104. Failure to comply with child support order - Criminal sanctions**. - (a) Any person, ordered to provide support and maintenance for a minor child or children, who fails to comply with the order or decree, may, in the discretion of the court, be punished by imprisonment in the county workhouse or county jail for a period not to exceed six (6) months.

[2] **29-9-102. Scope of power.** - The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:

(1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice.
(2) The willful misbehavior of any of the officers of said courts, in their official transactions.
(3) The willful disobedience or resistance of any officer of the said courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree or command of said courts.
(4) Abuse of, or unlawful interference with, the process or proceedings of the court.
(5) Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them.
(6) Any other act or omission declared a contempt by law.

**29-9-103. Punishment.** - The punishment for contempt may be by fine or by imprisonment or both.
(b) Where not otherwise specially provided, the circuit, chancery, and appellate courts are limited to a fine of fifty dollars ($50.00), and imprisonment not exceeding ten (10) days, and all other courts are limited to a fine of ten dollars ($10.00).

3

concluded:

> The punishment authorized far exceeds the $50.00 fine and ten days imprisonment provided in Tennessee Code Annotated §29-9-102, 103, which are the sanctions traditionally utilized to vindicate the authority of the courts.

As Judge Daughtrey observed in *State v. Sammons*, 656 S.W.2d 862 (1982) at 866:

> [t]he only contempt power conferred upon the trial court for infractions of visitation and custody orders is found in T.C.A. §29-9-102. T.C.A. §29-9-103 limits the maximum fine imposible by the circuit court for such contempts to $50.00, and the maximum period of imprisonment to ten days.

In this case, the petition charged specific violations of the ordered visitation, and asked that the mother be punished. Clearly the Trial Court's contempt judgment was made to vindicate the authority of the Court. He observed:

> I don't like sentencing people to jail. I think it is somewhere beyond the last resort, but somewhere the Court has got to uphold the integrity and validity of its own orders, or we have nothing left at all except fight it out on the street.

The Court's action falls within and is authorized by T.C.A. §29-1-102-3. We affirm the contempt judgment.

The mother argues that she should be allowed to move with the child to the State of Florida. During the trial, the father's principal resistance to the move was expressed in the following question and answer:

> Q. Mr. Smith, if the Court should consider allowing Mrs. Smith to take that job and move to Florida, do you think you would ever have visitation again?
>
> A. No, I wouldn't.

The mother was asked about her reasons for moving, and she gave the following answers:

4

Q.    You've asked this Court over and over again to be allowed to move to Florida?

A.    Yes.

Q.    What's in Florida?

A.    A lot of family, a lot of support, good jobs, good schools.

Q.    What family is down there?

A.    My mother, my step-father, aunt, uncle, cousins, my brother.

Q.    Do you have any family up here at Hamlin County?

A.    None whatsoever.

Q.    If you were allowed to move to Florida, do you understand that Justin would probably spend the entire summer with his daddy?

A.    Yes, I understand that.

Q.    And that's ok with you?

A.    Yes, it is.

Q.    You would bring him up here and get him here for the visitation?

A.    Yes.

Q.    Would y'all have any plans to come up here around Christmas, or would you provide some transportation during Christmas?

A.    If the Court ordered it, I would see that he was here.

The Court, in denying removal, gave as a reason:

In any event, Mrs. Smith's application to leave the State of Tennessee with the child is denied because I am convinced that will be the last visit the child will ever make to the State of Tennessee.

The mother has the burden of establishing by

preponderance of the evidence that it is in the child's best

interest to relocate with the child to the State of Florida.

*Taylor v. Taylor*, 849 S.W.2d 319 (Tenn. 1993).

5

*Taylor* teaches that among the factors to be considered in removal disputes are that the welfare of the child is affected by the welfare of the custodial parent, and that the best interests of the child must be reviewed in order to determine the advantages of the move to the child.

The father in his brief on appeal argues that allowing the mother to move to Florida would preclude any meaningful relationship between the father and child, and to move the child from school friends and surroundings would be devastating to the child, and in effect, he fears that he would no longer have any visitation with the child. Most of his concerns are to a degree present in any relocation.

We believe the evidence preponderates against the Trial Judge's decision, and that the mother and child should be permitted to relocate to Florida. T.R.A.P. Rule 13(d). The record does not establish that the father would lose all visitation with the child, as he fears, should the move take place. Moreover, as the Supreme Court in *Rogero v. Pitt*, 759 S.W.2d 109 (Tenn. 1988) noted, ?any arrangements regarding custody of a minor child are subject to the continuing control of the court rendering the decree, so long as one of the parties remains in Tennessee.? *Id.* 112.

Accordingly, the judgment of the Trial Court is affirmed as to the finding of contempt, but reversed on the issue of the mother's moving to Florida.

Upon remand, the Trial Court will set liberal visitation with the father during summer holidays and other school vacations.

6

The cost of the appeal is assessed one-half to each party and the cause remanded.

_____
Herschel P. Franks, J.

CONCUR:

_____
Don T. McMurray, J.

_____
Charles D. Susano, Jr., J.

7